## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

_____

|  |  |
|---|---|
| ELI LILLY AND COMPANY, ) | |
| ) | Case No. _____ |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| BRAD M. BEATTY and ) | |
| LILLIAN FINANCE, LLC, ) | |
| ) | |
| Defendants. ) | |

_____)

### **COMPLAINT**

Plaintiff Eli Lilly and Company ("Lilly"), for its Complaint against Defendants Brad M. Beatty and Lillian Finance, LLC ("Defendants"), alleges the following:

### **INTRODUCTION**

For over 125 years, Lilly has operated under the LILLY name and mark. It is one of the most well-known pharmaceutical and healthcare companies in the United States. Lilly has provided ground-breaking medicines and treatments, contributed to charitable and philanthropic causes, and engaged with the financial community and its investor stakeholders under its LILLY name and mark.

This action arises from Defendants' unauthorized use of LILLY and LILLIAN, as well as the financial symbol LY which is nearly identical to Lilly's stock ticker symbol LLY – all in the healthcare field. Defendants are knowingly and willfully trading upon Lilly's goodwill, having acknowledged the need to seek Lilly's consent to use these names and marks in prior discussions with Lilly. Therefore, Lilly seeks injunctive relief, monetary damages, and other remedies to prevent consumer and investor confusion, and to protect the valuable goodwill in its marks.

## PARTIES

1.     Lilly is an Indiana corporation with a principal place of business at Lilly Corporate Center, Indianapolis, Indiana.

2.     Defendant Brad M. Beatty is an individual residing in this judicial district, with a primary residence in St. Petersburg, Florida. On information and belief, Defendant Beatty is personally responsible for and directs the acts of all Defendants and other entities in which he has served as an officer, manager, or principal, and therefore should be held personally liable for their misconduct.

3.     Defendant Lillian Finance, LLC is a Florida limited liability company with a principal place of business in this judicial district at 260 1st Avenue S., St. Petersburg, Florida.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1338, as well as 15 U.S.C. § 1121, because this action arises under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*  This Court has supplemental jurisdiction over Lilly's state law claims under 28 U.S.C. § 1367(a).  This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and this lawsuit is between citizens of different States.

5.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to Lilly's claims occurred in this judicial district.

## FACTS

Lilly's History in Healthcare, Philanthropic Work and Finance

6.     Lilly adopted the LILLY name and mark over 125 years ago for use with its entire line of products and services.

7.     Over the course of its history, Lilly has been responsible for some of the most widely-used medicines and pharmaceutical products in the world. For example, in 1923 Lilly introduced the world's first commercially-available insulin product for the treatment of diabetes.  In 1955 Lilly became the first company to manufacture and distribute the Salk Polio Vaccine globally. In 1982 Lilly introduced the world's first human-healthcare product created using

recombinant DNA technology.  This ground-breaking work continues today under the LILLY mark and name.

8.     Lilly currently has more than 35,000 employees and its products are marketed in 120 different countries across the globe.  In 2021 alone, Lilly's revenues exceeded $ 20 billion.

9.     Lilly is consistently recognized as one of the United States' leading companies in areas such as diversity, research and development, social impact, and employee benefits.

10.    In addition to its extraordinary accomplishments with respect to medicines, pharmaceuticals and healthcare, Lilly is known for its charitable efforts and philanthropy.

11.    As early as 1937, the Lilly Endowment began to pursue philanthropic efforts.  More recently, the Lilly Diabetes Solution Center opened to assist people who need help paying for their Lilly insulin in the U.S.

12.    Lilly's LILLY FOUNDATION – established over 50 years ago – makes philanthropic investments aimed at improving global health and education, among other charitable causes. Lilly's LILLY CARES Foundation provides free medications to qualifying U.S. patients and has helped more than one million patients with financial need to receive medicines over the past 20 years.

13.    Lilly is actively involved in business ventures with others relating

to healthcare and the financing of the same.  Over the last two decades, Lilly has committed $2 billion to promote early biotechnology development through venture investing and has launched solution-focused partnerships through multiple areas of its business, including Lilly Asia Ventures, Lilly New Ventures, Lilly Gateway Labs, the Lilly Institute for Genetic Medicine, Lilly Open Innovation and Drug Discovery, and the Lilly Grants Office.   Lilly also regularly engages with the investment community, and its stock (traded using the LLY symbol) is closely monitored by investors and the media.

<u>Lilly's Famous LILLY Name and Mark</u>

14.    For decades, Lilly and its affiliates have extensively advertised and promoted LILLY goods and services across the United States, including the State of Florida.

15.    Lilly's advertising and promotion of goods and services under the LILLY name and mark have included television, radio, newspaper, social media, trade journals and other means, including trade shows.

16.    As a result of Lilly's extensive sales, advertising and promotional efforts, consumers recognize the LILLY name and mark as an identifier of Lilly and its offerings, especially in the fields of health and finance.

17.    Since long before Defendants' acts complained of herein, the LILLY mark has been famous among the general consuming public of the

United States, as well as consumers in Florida, in connection with Lilly's goods and services.

18.  Lilly's longstanding rights are reflected in part by its numerous trademark and service mark registrations, including the following registrations in the United States Patent and Trademark Office, among many others:

| MARK | REG. NO. (DATE) | GOODS/SERVICES |
|---|---|---|
| **LILLY** | No. 1226434 (Feb. 8, 1983) | *Medicines, pharmaceutical preparations and drugs* (Class 5) |
| **LILLY** | No. 4478467 (Feb. 4, 2014) | *Promoting collaboration within medical communities to achieve advances in healthcare* (Class 35) |
| **LILLY** | No. 5525597 (July 24, 2018) | *Medical information services* (Class 44) |

19.  Lilly owns several U.S. service mark registrations specifically covering its financial-related services.  These include:

| MARK | REG. NO. (DATE) | GOODS/SERVICES |
|---|---|---|
| **LILLY** | No. 5141667 (Feb. 14, 2017) | *Providing grants for healthcare professional education, patient advocacy and consumer education programs* (Class 36) |
| **LILLY FOUNDATION** | No. 5898973 (Oct. 29, 2019) | *Philanthropic services, namely, providing funding to assist in the enhancement of public health, education and communities* (Class 36) |
| **LILLY CARES** | No. 5821069 (July 30, 2019) | *Charitable services, namely, a patient assistance program to provide prescription pharmaceuticals to low income patients* (Class 44) |
| **LILLY ASIA VENTURES** | No. 6189172 (Nov. 3, 2020) | *Venture capital financing; venture capital services, namely, providing financing to seed and early-stage companies; venture capital advisory, financing, funding and fund management services* (Class 36) |

20.    Lilly also owns registrations for other LILLY-formative marks for various goods and services in the healthcare field, e.g., LILLY MOMENTS (Reg. No. 6531089), LILLY ONCOLOGY RING (Reg. No. 5333104), LEAP AT

LILLY (Reg. No. 6479569), and LILLYPAD (Reg. No. 5141666).

21.   All of the registrations identified in Paragraphs 18-20 above are valid and subsisting.  Reg. Nos. 1226434 and 4478467 are incontestable and constitute conclusive evidence of the validity of the marks and of Lilly's ownership of and exclusive right to use these marks for the goods and services specified therein.  15 U.S.C. §§ 1065, 1115(b).  The remaining registrations identified above constitute *prima facie* evidence of the validity of the marks and Lilly's ownership of and exclusive right to use these marks for the goods and services specified therein.  15 U.S.C. § 1057(b).

<u>Lilly's Well-Known LLY Stock Symbol</u>

22.   Since 1952, as a publicly traded company, Lilly has used LLY as its stock symbol.  This symbol is used on Lilly's investor website and various materials distributed to the public, and it is widely recognized and associated with Lilly.  In fact, Lilly's Chairman and CEO, Dave Ricks, appears on popular television networks such as CNBC, Bloomberg, or Fox Business each quarter on the morning of Lilly's earnings call, with the LLY symbol displayed on the screen and with the LILLY name and mark:



<u>Defendants' Unauthorized Use of LILLY, LILLIAN, and LY</u>

23.    Upon information and belief, in late 2021 or early 2022, Defendants began using the LILLY mark, as well as names such as Lilly Finance and Lilly Foundation, in relation to finance-related services in the healthcare field, including a cryptocurrency intended to facilitate transactions in the healthcare industry.

24.    In approximately November of 2021, Defendant Beatty formed Lilly Finance, L.L.C.; and in approximately January 2022, Defendant Beatty formed Lilly Foundation LLC.

25.    Defendants registered the domain name <lillyfinance.com> and used the corresponding website to promote their LILLY services.  This website prominently displayed the LILLY mark and described a "blockchain-based

medical platform to revolutionize healthcare." Below are excerpts from Defendants' website:





Defendants' extensive involvement in healthcare, and specifically the pharmaceutical industry, is demonstrated by Defendants' website, which listed their Lilly "Team" of personnel, including an individual identified as the "Lead Pharmaceutical Business Development"; another individual identified as "Clinical Coordinator"; and another individual identified as "Medical Partnership Consultant".

26.    Defendants emphasize their efforts in the healthcare industry throughout their marketing materials.   For example, they use the slogan "Health. Wealth. Happiness."

27.    In February 2022, Defendants issued a press released titled "Lilly Token (Ly) | Blockchain-Based Medical Platform to Revolutionize Healthcare Lilly Finance, LLC."   A copy of this press release, which features the LILLY mark and Defendants' logo, is attached as Exhibit A.   It states:

> From the lab bench to billing, from diagnostics to data management, Lilly supports projects that break down the barriers to new knowledge by targeting research and medical practice areas where real needs have been neglected. The goal is to solve problems in healthcare by employing a next-generation financing system aimed at accelerating positive and innovative change.

28.    This press release also refers to Defendants' "Lilly Foundation" that will "bring medical financing and care to children globally."

29.    Defendants have entered into a partnership with a NASCAR team. Likewise, Lilly had sponsored a NASCAR team.   In fact, in 2017, Lilly was

named "Official Diabetes Health Partner of NASCAR."  The parties' respective cars are shown below:

 

30.    In addition to their extensive use of LILLY, Defendants are using LY in connection with a cryptocurrency purportedly designed for healthcare transactions. Like other cryptocurrencies, Defendants' LY cryptocurrency can be bought and sold by the public.  Defendants specifically target consumers who are focused on healthcare.

31.    Defendant Beatty acknowledged through his counsel that he and his company needed to obtain Lilly's consent to use LILLY as part of Defendants' names and marks by stating that they had made or were making efforts to obtain a formal consent from Lilly's Board members and Eli Lilly family members.  Thus, Defendants know their use of LILLY is unauthorized.

32.    Despite Lilly's objections, Defendants have since adopted, in part, the nearly identical name and service mark, LILLIAN.  Defendants recognize on their website that LILLY is a short-form of LILLIAN.

33.     Upon information and belief, in approximately April of 2022, Defendant Beatty formed Defendant Lillian Finance, LLC.

34.     In February of 2022, Defendants' affiliated company, Lilly Finance L.L.C., filed a U.S. trademark application for LILLY.  In April of 2022, Lilly Finance L.L.C. filed a U.S. trademark application for LILLIAN.  Both of these applications now stand abandoned, even though Defendants continue to use these marks.

35.     Defendants also registered the domain name <lillianfinance.com>, and this website now shows the LILLIAN mark.  Defendants' original domain name <lillyfinance.com> automatically redirects to this website.

36.     Defendants continue to use LILLY on their website and other marketing.  Indeed, as of May 26, 2022, Defendants continue to include on their website the contact email address of info@lillyfinance.com.

37.     Below are screenshots of Defendants' website captured on May 26, 2022.  Each of the links shown on this page connect to articles or streaming in which Defendants refer to themselves as LILLY:



In the "Listing Party" link shown above on the left, Defendant Beatty and other personnel of Defendants discuss Lillian Finance but refer to their company as LILLY several times. For example, Defendants' Chief Technology Office (CTO) refers to the "Lilly Channel AMA" and "Lilly tokens" as well as the "Lilly logo" tattoed on his arm. Defendant Beatty himself discusses the NASCAR promotion and shows an image of the car prominently displaying "Lilly."

38.    The website also continues to reference LY as a "token" name, i.e., a cryptocurrency. Earlier, Defendants indicated that LY was short for LILLY FINANCE and now Defendants indicate that it is short for LILLIAN FINANCE (as well as Lilly Finance) as noted below despite the fact that LILLIAN does not contain the letter Y:



39.    As  shown  on  Defendants'  website,  Defendants'  "Team"  of
personnel currently includes an individual identified as "Lead Pharmaceutical
Business   Development";   another   individual   identified   as   "Clinical
Coordinator";  and  another  individual  identified  as  "Medical  Partnership
Consultant."   The  site  links  to  a  bio  for  each  Team  member,  including  the
following  for  the  individual  whose  role  is  "Lead  Pharmaceutical  Business
Development":



**JT | Lead Pharmaceutical Business Development**

Highly experienced Pharmaceutical and Biotech Professional in areas, including Business Development, Medical Affairs, Research, and Drug Safety/Regulatory.

These areas listed on Defendants' website are precisely the pharmaceutical and healthcare areas in which Lilly has been a market leader for over a century.

40.     Defendants also promote their business on social media using the Twitter account name @lillyfinance and, more recently, @lillianfinance. Screenshots from Defendants' Twitter pages, previous and current, are shown below:





As shown above, Defendants continue to promote their LY token along with the slogan "Heath. Wealth. Happiness."

41.     Defendants' business has always been and remains focused on healthcare and financial investments in this field.  Both the Defendants' website homepage and Twitter page state: "The next generation of medical finance blockchain."  The website also states, for example: "The future of health and wealth is Lillian's mission."

42.     Upon information and belief, Defendants' adoption and continued use of LILLY and the other names and marks noted above are to trade upon Lilly's goodwill and to deceive consumers into believing, falsely, that there is an association between Lilly and Defendants.

43. Defendants' use of LILLY has already led to actual confusion in the marketplace as evidenced by the below search result for the term "Lilly Finance" on Google showing Defendants' Lilly Finance (including the reference to LY) with Lilly's financial data as an indented sub result (including the reference to LLY):



**COUNT I**

**TRADEMARK AND SERVICE MARK INFRINGEMENT –**
**15 U.S.C. § 1114**

44. Lilly re-alleges the allegations contained in Paragraphs 1 through 43, above, as if fully set forth herein.

45. Defendants' unauthorized use of LILLY and LILLIAN, and any other names or marks containing these terms, is likely to cause confusion, or to cause mistake, or to deceive.

46. Defendants' conduct constitutes trademark and service mark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

47.     Defendants' trademark and service mark infringement is willful and intentional.

48.     Defendants' acts greatly and irreparably damage Lilly and will continue to so damage Lilly unless restrained by this Court; wherefore, Lilly is without an adequate remedy at law.

## COUNT II

### FALSE DESIGNATION OF ORIGIN – 15 U.S.C. § 1125(a)

49.     Lilly re-alleges the allegations contained in Paragraphs 1 through 17 and 22 through 48, above, as if fully set forth herein.

50.     Defendants' unauthorized use of LILLY, LILLIAN and LY, and any other names or marks containing these terms, is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Defendants with Lilly, or as to the origin, sponsorship or approval of Defendants' offerings.

51.     Defendants' unauthorized use of such names and marks constitutes a false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

52.     Defendants' false designation of origin is willful and intentional.

53.     Defendants' acts greatly and irreparably damage Lilly and will continue to so damage Lilly unless restrained by this Court; wherefore, Lilly is without an adequate remedy at law.

## COUNT III

## TRADEMARK AND SERVICE MARK DILUTION – 15 U.S.C. § 1125(c)

54.    Lilly re-alleges the allegations contained in Paragraphs 1 through 53, above, as if fully set forth herein.

55.    The LILLY mark is famous and distinctive among the general consuming public of the United States as a designation of source of Lilly's goods and services; and it achieved that fame and distinctiveness prior to the acts of Defendants complained of herein.

56.    Defendants' acts are likely to blur the distinctiveness of the famous LILLY mark and to harm the reputation of the famous LILLY mark. Therefore, Defendants' acts constitute trademark dilution, by blurring and tarnishment, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

57.    Defendants' trademark and service mark dilution is willful and intentional.

58.    Defendants' acts greatly and irreparably damage Lilly and will continue to so damage Lilly unless restrained by this Court; wherefore, Lilly is without an adequate remedy at law.

//

//

## COUNT IV

## TRADEMARK DILUTION – FLORIDA STATUTES § 495.151

59.     Lilly re-alleges the allegations contained in Paragraphs 1 through 58, above, as if fully set forth herein.

60.     The LILLY mark is famous and distinctive among the public throughout the State of Florida as a designation of source of Lilly's goods and services; and it achieved that fame and distinctiveness prior to the acts of Defendants complained of herein.

61.     Defendants' acts are likely to blur the distinctiveness of the famous LILLY mark and to harm the reputation of the famous LILLY mark. Therefore, Defendants' acts constitute trademark dilution, by blurring and tarnishment, in violation of Section 495.151 of the Florida Statutes.

62.     Defendants' trademark and service mark dilution is willful and intentional.

63.     Defendants' acts greatly and irreparably damage Lilly and will continue to so damage Lilly unless restrained by this Court; wherefore, Lilly is without an adequate remedy at law.

//

//

## COUNT V

## UNFAIR COMPETITION AND DECEPTIVE TRADE PRACTICES – FLORIDA STATUTES § 501.204

64.     Lilly re-alleges the allegations contained in Paragraphs 1-17 and 22-43, and 50, above, as if fully set forth herein.

65.     Defendants' acts complained of herein are unfair and deceptive and constitute unlawful acts and practices in the violation of Section 501.204 of the Florida Statutes.   Such acts were intentional and willful because Defendants knew about Lilly's longstanding trademark rights and its famous LILLY mark.

66.     Defendants' acts greatly and irreparably damage Lilly and will continue to so damage Lilly unless restrained by this Court; wherefore, Lilly is without an adequate remedy at law.

## COUNT VI

## TRADEMARK INFRINGEMENT, TRADE NAME INFRINGEMENT, AND UNFAIR COMPETITION – FLORIDA COMMON LAW

67.     Lilly re-alleges the allegations contained in Paragraphs 1-17 and 22-43, and 50, above, as if fully set forth herein.

68.      Defendants' acts complained of herein constitute trademark and service mark infringement, trade name infringement, and unfair competition in violation of Florida common law.

69.     Defendants' acts greatly and irreparably damage Lilly and will continue to so damage Lilly unless restrained by this Court; wherefore, Lilly is without an adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Lilly prays for relief as follows:

1.     A judgment enjoining Defendants and their officers, directors, employees, agents, representatives, affiliates, successors and assigns, and all others in active concert or participation with them, from (a) using in any manner LILLY, LILLIAN, or LY, or any other name, mark or symbol that includes the letter-string LILLY or LILLIAN or a short-form thereof, or an abbreviation of these names, marks and symbols, including but not limited to Lilly Finance, Lilly Foundation, Lillian Finance, Lillian Foundation or LY; (b) using in any manner any other mark, name, domain name or other designation that is confusingly similar to Lilly's LILLY name and mark and the stock symbol LLY; and (c) doing any act or thing likely to confuse or to deceive consumers into believing that there is some connection between Lilly and Defendants or between the parties' respective offerings.  This injunction shall apply with respect to all uses on or in connection with any products or services or in promotional materials in any print or electronic medium, including but not limited to domain names, websites and social media;

2.     A judgment ordering Defendants, pursuant to 15 U.S.C. § 1116(a), to file with this Court and serve upon Lilly within thirty (30) days after entry of the injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction and implemented adequate and effective means to discontinue offering goods or services under names and marks that are confusingly similar to LILLY or LLY;

3.     A judgment ordering Defendants, pursuant to 15 U.S.C. § 1118, to deliver up for destruction all labels, signs, prints, packages, wrappers, receptacles, and advertisements bearing LILLY, LILLIAN, LY, or any variation thereof, as well as all plates, molds, matrices, and other means of making the same;

4.     A judgment ordering Defendants to abandon U.S. Service Mark Application No. 97404634 in the United States Patent and Trademark Office for LILLIAN, and any other trademark or service mark applications for LILLY, LILLIAN or LY, or any confusingly similar marks, and prohibiting Defendants from filing trademark or service mark applications or obtaining registrations for such marks in the future;

5.     A judgment that Defendants account for and disgorge to Lilly all of the profits realized by Defendants, or other persons or entities acting in concert or participating with Defendants resulting from Defendants' acts of

trademark infringement, false designation of origin, trademark dilution, unfair competition, and other misconduct alleged herein;

6.  A judgment awarding compensatory damages, plus interest, in an amount to be determined;

7.  A judgment awarding punitive damages in an amount to be determined;

8.  A judgment that Lilly recover its reasonable attorneys' fees and costs under 15 U.S.C. § 1117(a) due to the exceptional nature of this case, as well as under Florida law;

9.  A judgment that Lilly recover the costs of this action plus interest; and

10.  A judgment that Lilly be granted such other and further relief as the Court deems just and proper.

//

//

//

//

//

//

//

//

Respectfully submitted,

Date:  June 3, 2022                   /s/ Dawn Siler-Nixon

Dawn Siler-Nixon
FordHarrison LLP
Fla. Bar No. 993360
DSiler-Nixon@fordharrison.com
101 E. Kennedy Boulevard, Suite 900
Tampa, Florida 33602
Telephone:  (813) 261-7834

Jonathan S. Jennings (pro hac vice to be filed)
jsj@pattishall.com
Phillip Barengolts (pro hac vice to be filed)
pb@pattishall.com
Seth I. Appel (pro hac vice to be filed)
sia@pattishall.com
Pattishall, McAuliffe, Newbury,
   Hilliard & Geraldson LLP
200 S. Wacker Drive, Suite 2900
Chicago, Illinois  60606
Telephone:  (312) 554-8000

*Attorneys for Plaintiff, Eli Lilly and Company*